GUARANTY STATE BANK OF OSCEOLA, Appellant, v. POTTER et al, Respondents.

(208 N. W. 170.)

(File No. 5670.   Opinion filed April 5, 1926.)

1. **Principal and Surety—Evidence—Fraud.**

   In action on note, evidence as to false representation in obtaining signature of defendant as surety held sufficient to support verdict for defendant.

2. **Principal and Surety—Fraud—Proof That Surety Signing Note With Cashier of Bank Relied on Representations Made by Cashier and Officers of Bank That Money Was to Be Used to Start Cashier in New Business, When in Fact It Was Used to Cover Cashier's Shortage, Held Admissible in Action on Note.**

   Where surety had been induced to sign note for cashier of bank on false representations that money was to be used to start cashier in new business, when in fact it was used to cover cashier's shortage, proof that surety relied on such representations made by cashier and officer of bank was properly admitted.

3. **Contracts—One Seeking to Hold Another to Apparent Contract Must Show That Material Facts Necessary to Assent Were Not Suppressed.**

   One seeking to hold another to performance of apparent contract is bound to show that he did not suppress material facts necessary to assent, without which there could be no meeting of minds.

4.  Principal and Surety—Instructions—Instruction That Withhold-
    ing Fact From Surety on Note With Cashier That Cashier Was
    Indebted to Bank Was Constructive Fraud Held Proper,
    Where It Was Alleged that Note Was Signed on False Repre-
    sentations that Proceeds Would Be Used to Start Cashier in
    Business.

    In action on note signed by surety with cashier of bank on
    false representations by cashier and officer of bank that it
    was to be used to start cashier in new business, instead of to
    apply on cashier's shortage, instruction that failure of cashier
    and officer to disclose fact that cashier was then'indebted to
    bank was constructive fraud held proper.

5.  Trial—Burden of Proof—Instructions—In Action on Note Al-
    leged to Have Been Signed by Surety on False Representation,
    Instruction That Burden is on Defendant to Prove Fraud by
    Preponderance of Evidence Held Sufficient.

    In action on note, where surety claimed note was induced
    by false representation, instruction that fraud is affirmative
    defense, with burden on defendant to prove it by preponder-
    ance of evidence, held sufficient.

6.  Contracts—Presumptions—Acts of Commission or Omission Are
    Presumed to Be Honest, Except Where presumptively Fraudu-
    lent by Statute, and There Must Be Sufficient Proof of Fraud-
    ulent Intent to Overcome Presumption of Honest Intent.

    Fraud may be inferred from acts of commission or ommis-
    sion, but, as such acts are presumed to be honest, except where
    statute makes them presumptively fraudulent, proof of fraudu-
    lent intent must be clear and convincing to overcome presump-
    tion of honest intent.

7.  Contracts—Evidence—Fraud.

    Fraud, like any other fact, may be proved by preponderance
    of evidence.

8.  Principal and Surety—Evidence—Letter Written to Surety on
    Note Signed by Cashier of Bank, Referring to Effort by Bank
    to Collect From Bonding Company, Held Too Indefinite to
    Impart Actual Knowledge to Surety, Before He Signed Col-
    lateral Note Relied on as Waiver of Discovered Fraud, That
    Loan Had Not Been Made to 'Cashier as Represented, But
    That Proceeds Had Been Used to Cover Cashier's Shortage.

    In action on note alleged by surety to have been signed by
    him on false representation that cashier for whom he signed
    note was to be started in business, when in fact proceeds were
    used to cover cashier's shortage, reference to effort of bank
    to collect from bonding company, made in letter to surety held
    too indefinite to impart actual knowledge to surety, before he
    signed collateral note relied on as waiver of discovered fraud,
    that no loan had in fact been made as was represented.

9. **Principal and Surety — Waiver — Contracts — Giving Collateral Note by Surety Who Signed Note for Bank Cashier on False Representation That Proceeds Would be Used to Start Cashier in Business Instead of to Cover Shortage, if Waiver of Discovered Fraud, Did Not Bind Surety to New Contract Not Within Terms of Agreement.**

Where surety had been induced to sign note for cashier of bank on false representation that proceeds would be used to start cashier in new business, when in fact they were used to cover shortage, later giving collateral note, if waiver of discovered fraud, did not bind surety to performance of new contract not within terms of first agreement which was to secure present loan of money and not payment of defalcation.

Appeal from Circuit Court, Kingsbury County; HON. M. MORIARTY, Judge.

Action by the Guaranty State Bank of Osceola against P. R. Potter and another. From a judgment for defendants, and from an order overruling its motion for new trial, plaintiff appeals. Affirmed.

*Chamberlain & Hall* and *Wilmarth, Haney, McCoy & McCoy,* all of Huron, for Appelant.

*Null & Royhl,* of Huron, for Respondents.

(2)  To point two of the opinion, Respondent cited:  Townsite Co. v. Novatny, 32 S. D. 566; Ederado Lumber Co. v. Bank, 127 N. W. 522.

(4)  To point four, Respondent cited:  Thompson v. Insurance Co. (Me.), 46 Am. Rep. 357; Andrews v. Jackson (Mass.), 37 L. R. A. 402; Robertson v. Holton (N. C.), 37 L. R. A. (N. S.) 298; Olston v. Power Co. (Ore.), 20 L. R. A. (N. S.) 815.

(5)  To point five, Appellant cited:  Clipstein v. Raschein, 117 Wis. 248, 94 N. W. 64; Poertner v Poertner, 66 Wis., 644, 29 N. W. 388; Faarar v. Churchill, 135 U. S. 609.

(8)  To point eight, Respondent cited:  Wheelock v. Verkeley, 138 Ill. 153, 27 N. E. 942; Bank of Fargo v. Westby (N. D.), 172 N. W. 665; International Harvester Co. v. Thomas (N. D.), 176 N. W. 523.

BURCH, C.  Plaintiff sues to recover from defendant $2,000, with interest.  The complaint purports to state two causes of action; the first upon a promissory note dated April 27, 1920, for $2,000, with interest at 10 per cent from date, due March 1, 1921,

signed by P. R. Potter and J. F. Agnew, with a collateral note for the same indebtedness, due March 1, 1922. The second cause of action declares upon the same indebtedness, but, instead of setting out the notes, alleges a loan of $2,000 to defendants. The case was tried upon the so-called first cause of action. Defendant Potter was not served with process, and did not appear. Defendant Agnew answered, alleging as a defense that he was surety only upon the notes; that his signature was procured by fraud; and that he received no consideration therefor. The case was tried to a jury, the jury returned a verdict for defendant, judgment was entered thereon, and a motion for new trial made and denied. From the judgment and order overruling motion for new trial this appeal is taken.

[1] Appellant challenges the sufficiency of the evidence to support the verdict and judgment. Potter was at the time of the taking of the first note cashier of plaintiff bank, overdrawn on his personal account, short in some of the accounts of the bank, and had all his bank stock hypothecated with the James Valley Bank of Huron. He was an unsatisfactory officer, and the directors and officers were arranging to make a change and put one Peter Le Claire in as cashier, and did make such change the day following the taking of the first note. At a directors' meeting a day or two before the note was taken the matter of Mr. Potter's obligations to the bank was discussed, and, he not being able to pay, was urged to get a note with a surety. The name of Agnew was mentioned at that meeting, and it was agreed among the directors that Agnew would be satisfactory as surety, if his name could be obtained on the note. Potter went to see Agnew on the 26th of April, and Agnew refused to sign with him. The next day Le Claire, who was at that time a director and vice president of the bank, went with Potter, and on that date the note was obtained. Agnew claims that he was induced to sign by representations made by Le Claire to the effect that Potter had procured a position with a bank at Faith, and had to have $2,000 in furtherance of such enterprise; that Le Claire assured Agnew that Potter was financially responsible that he (Le Claire) would see that the note was taken care of, and give Agnew no trouble; and that the bank would let Potter have the money if Agnew would sign. Some of this conversation was de-

nied, but it was admitted that Agnew was not informed of Potter's purpose in getting the note to fix up a shortage with the bank, and Le Claire admitted that some time after the note was given he old Agnew that Potter got his loan through all right. So far as the evidence is conflicting, it was for the jury to determine where the truth lay. The evidence as to the false representations in obtaining the first note is amply sufficient to support the verdict. However, Agnew signed the collateral note in October of the same year at a time when he must have known that Potter had not gone into the bank at Faith, and it is contended that this waived any objection he might have to the claimed fraud. Agnew denied discovering the facts before signing, but he does admit that he knew Potter had not gone to Faith. The court did not err in overruling plaintiff's motion for directed verdict or in overruling its motion for new trial on the ground of insufficiency of the evidence.

[2] Objection is made to the action of the court in permitting the defendant to testify that he believed and relied upon the representation made by Potter and Le Claire that money was to be obtained by use of the note to be used to launch Potter in a new business at Faith. It is claimed that such representation, if made, was not a statement of fact, but of a future intent, and not actionable fraud. With this we cannot agree. If made, it was not only a statement of fact, but a warranty and a part of the consideration. We must not lose sight of the fact that plaintiff is not a third party, but one of the contracting parties seeking to hold defendant as a guarantor of the debt of one of its defaulting officers. It is quite conceivable that defendant might be unwilling to make good a defalcation of an officer of a bank, although willing to sign a note with such officer, when induced to believe that such officer was all right, financially responsible, and going into a new business. The contract in the first instance would have a very different aspect than that in the second. The court did not err in admitting this proof.

[3] Appellant assigns error in the court's refusal to instruct the jury that the mere failure of Le Claire to inform Agnew that Potter was overdrawn at the bank would not be actionable fraud, and in giving an instruction with an opposite effect (in connection with the definition of constructive fraud) "that both Potter and

Le Claire knew that Potter was then indebted to plaintiff bank because of a large overdraft and other obligations, and failed to disclose these facts." Appellant contends that the instruction given was not within the issues of the case; defendant not having pleaded fraud in the failure of plaintiff to disclose facts to him, while the requested instruction was applicable, and therefore the giving of the one and the refusal of the other was prejudicial. Defendant did plead want of consideration. Plaintiff, in seeking to hold defendant to the performance of an apparent contract, is bound to show that it did not suppress material facts necessary to defendant's assent, without which there could be no meeting of minds.

[4] Perhaps technically the facts in this case do not warrant the submission of the question of fraud at all. The proof of the affirmative representations largely admitted by appellant show the consideration for the note, and appellant, admitting that such consideration was not paid or intended to be paid, admits failure of consideration, and the jury might have been so instructed. But, the case having been tried upon the theory that the officers of the appellant bank conspired to defraud respondent by inducing him to sign in the belief it was to be used for one purpose, while it was to be used for another, it became necessary to advise the jury of what constituted fraud in furtherance of such conspiracy. The complaint pleads a conspiracy and the acts claimed to have been done in furtherance thereof. The court did not err in thus instructing the jury.

[5] Appellant claims he was prejudiced by the court's refusal to give this requested instruction:

"Fraud is never presumed, but must be established by the party alleging it by clear and convincing proof."

[6, 7] The court instructed the jury that fraud is an affirmative defense, and the burden was upon defendant to prove such defense by a preponderance of the evidence. We think this was sufficient. Fraud may be inferred from acts of commission or omission, but, inasmuch as such acts are presumed to be honest, except in the few instances where the statute makes certain acts presumptively fraudulent, there must be sufficient proof of fraudulent intent to over come the presumption of honest intent. Courts have loosely used the negative and questionable statement that

"fraud is never presumed" as a substitute for the affirmative statement that honesty and fair dealing is presumed, which must be overcome by a preponderance of evidence inconsistent with such presumption. Fraud, like any other fact in a civil case, may be proven by a preponderance of the evidence, but unless the evidence is clear and convicing, it is not sufficient to overcome the presumption of honesty, without which there is no preponderance of evidence.

The only other assignment of error, except the refusal of the court to vacate the judgment and grant a new trial, is the refusal of the court to permit plaintiff to introduce a copy of a letter claimed to have been sent by plaintiff to defendant on the 22d of October, the day when it is claimed the collateral note was signed by defendant. Defendant denied getting the letter, but one of the officers testified that the letter was taken out of the post office after it had been mailed and handed to defendant. There is no proof that it was read by defendant before he signed the collateral note. The bank's copy was offered, and shows a request for a new note, and contains this expression:

"This new note we will attach to the old one as collateral, as we are going to use every effort to collect this from the bonding company."

[8, 9]  This reference to the bonding company is too indefinite to impart actual knowledge to respondent that no loan had in fact been made, as stated by Le Claire. The giving of the collateral note, if a waiver of discovered fraud, did not bind defendant to the performance of a new contract not within the terms of his first agreement, which, so far as the record discloses, was to sign as surety on a note with Potter to secure for Potter a present loan of money, and not to secure payment of a defalcation sought in this action.

Finding no error in the record, the judgment and order overruling a motion for new trial are affirmed.

MISER, Circuit Judge, sitting in lieu of SHERWOOD, J.